May it please the Court, Sean O'Keefe and my colleague, Robert Pitts, on behalf of the U.S. Philips Corporation. I would make three points on the merits. The first point is an inferior court has no power or right to deviate from the mandate. Here is a clear example of a failure to comply with the mandate not once but twice. That alone is justification for granting mandamus. Point number two is the Court's reasoning for declining to comply with the mandate is untenable. Back up to March of 2008. In March of 2008, KBC Bank filed a motion submitting itself to the full jurisdiction of the Court. In that motion, KBC asked for the following. First, the right to retain the funds. Second, the right to apply the funds to the exclusion of all other claimants. Third, and most importantly, a determination that it had prior rights to those funds based upon the application of a banker's lien, thereby validating the first two prayers for relief. The lower court granted that relief. That is the issue that has been in contest for the last five years. That relief has nothing to do with the expiration of the TRO. It is independent and separate and apart from that, which is something that this Court has noted in its past two opinions. This Court has explicitly stated the issue that is separate and apart is the party's right to retain the funds under the circumstances identified. The last point on the merits is KBC Bank purported to immunize the relief that had already been granted by withdrawing a motion that had already been disposed of by granting them the relief they requested. This was futile. At that point in time, the issue was on appeal, and this Court had reversed the lower court's determination that they had the right to retain, apply, and add primacy to the funds. That's the issue in contest, which really brings us to the core issue in this case. Who is entitled to the funds? KBC Bank came into this Court, not this Court, but the district court, and said, we have these funds. It is undisputed that those funds were received after they received notice of that injunction. That's why they sequestered them. That's their own admission. We have a letter from them confirming they received them after they received our notice. You can't receive these funds. So the core issue is, can a bank which receives funds unlawfully attach a lien to it and thereby deprive other claimants of the protection of the injunction that they properly obtained? And the answer is no. There's 100 years of precedent that is crystal clear on that fact, that KBC Bank has no power or right to attach a lien to funds received unlawfully. In fact, I would note, since I recognize the panelists, at least Your Honor and Judge Gould, that at the close of the last hearing, Your Honor stated the closing counsel, the bank does not have a right to attach a lien to funds received unlawfully. That's a principle of law that goes all the way back to England. And so that leaves us in a circumstance where, as this Court noted, we have two disputing claimants over a pot of funds. The first claimant received those funds unlawfully and did so under the following circumstances. They received a notice saying you cannot receive these funds from these serial contemptors, people who were put in jail and still continue to do transfers. Did not disclose that. We then subpoenaed the information and they were forced to disclose that. At that point in time, they went into court in an equity proceeding, in effect, which is the injunction proceeding, and said we want you to award the funds to us. And that is what the lower court did. There was no justification for that. At this point, what we would ask of the court is the following. We would ask this court to order KBC Bank, which has submitted itself to the jurisdiction of this court. It came here and asked for relief. This court has the right to grant the relief and say those funds are to be returned to the registry of the court. They are to be dispersed to the parties in accordance with their claims. We would ask that that mandate be issued with a provision assigning the case to another judge. This is a case where we have gone up and down the appellate ladder twice unnecessarily. Five years have passed over a relatively straightforward issue. Phillips believes strongly that the issue here is not just incidental, but it is systemic. If a ruling stands that a bank can knowingly receive funds from a contemptor, what the contemptor is doing is saying I am going to pay this debt in violation of this order, the debt that I want paid to exonerate my guarantee. And then the bank gets to say as long as we get the funds, it doesn't matter where they came from. Across the spectrum of civil and criminal law, there is a common denominator. If you receive funds unlawfully, they have to be returned. And that's all we're asking. I would reserve the rest of my time unless the panel has any questions. Okay. So the way I read our prior most recent decision is that we held that the district court did not abuse its discretion in finding that KBC Bank was not in contempt. So we upheld that ruling that we qualified it to the extent that if all that KBC Bank had done was to receive the funds and freeze them, that would be the end of it. But then we went on to say that KBC Bank claims the right not only to receive the funds and freeze them, which would have been fine. They wouldn't be in contempt of the prior order. They just did that. But instead what they did is went on and, in essence, paid off the loans. The bank paid off some loans or whatever with KBC's funds. However, the effect of the way the district court viewed that was that we affirmed his ruling on contempt, and that because we did that, KBC isn't even, you know, is not a party, and therefore there's no jurisdiction. And in a sense, we would have no jurisdiction if we viewed it the same way he viewed it. In response to that, let me go back to the March of 2008 ruling. The KBC's bank was labeled, the motion was labeled as a motion to modify the TRO. But, in fact, the relief sought was separate and apart from that. What KBC wanted was the right to retain the funds that they knew they'd received unlawfully. That's why they were there. And but for that, we would have hit them with the writ of execution. Two, they wanted the court to say, you now have the right to apply the funds. And the basis for that was their contention that they had a banker's lien that only attached upon receipt. That's the relief that the court granted. It gave them clean title to funds that were not theirs. And that was reversed. And that was reversed. By Judge Gold's panel. And that's what's the issue today because that went back down to the district court for a hearing pursuant to this court's direction, hold a hearing on the issue of the retention, the application, and the determination relative to the banker's lien. I filed a motion which sought contempt but also specifically prayed for and laid out in that motion why, whether there was a ruling on the contempt in our favor or not, our rights were prior. And we detailed that with a host of evidence. We arrive at the hearing, and Judge Reel says, I'm essentially giving the exact same ruling I gave two years ago. We then take it back to this court, and Your Honor says, the court panel says, no, you didn't do what we told you to do. It goes back down. Judge Reel sets an evidentiary hearing exactly in compliance with the mandate. I filed 200 pages worth of evidence and briefing in accordance with the local rules. KBC Bank does not file a brief. Instead, they file a motion that says, strike everything. Just stop because there's no proceeding here. There's no case of controversy. Well, of course there's a case of controversy. It's the issue of retention and application and whether or not a banker's lien applies under these circumstances. Who gets the funds? That's the issue in contest. It's clearly a case of controversy. And Judge Reel had no basis to say, well, I'm going to second-guess the jurisdiction of this court. Judge Reel simply had to hold that hearing and decide. Now, what happened was we filed our papers because really there are no disputed facts here. We've laid it out in explicit detail. They received the funds with knowledge of the injunction during the period when the injunction was effective. It's undisputed. The only issue is, is the legal position tenable that a bank who receives dollars unlawfully can say, we obtained prior right pursuant to a banker's lien, a lien that only arises upon receipt? The law is crystal clear on that. From the Central Bank 100 years ago all the way today through today, it's an absolutely perfect continuum. There is no case anywhere that we have found that sustains the position that a banker's lien can attach to funds received unlawfully. So what Judge Reel did was we followed the local rules. We filed our brief. They did not. We filed their evidence. They did not. They filed a motion that said just take it all off calendar because there's no case of controversy, and he granted that. For the reasons stated, that is absolutely not the case. The controversy is still here. Who gets the funds? Does the panel have any more questions for U.S. Phillips? I have no questions. Thank you. Then I will reserve whatever time I have left. Good afternoon, and may it please the Court. James Andreola on behalf of KBC Bank. We are here today, I just want to put it all in perspective, on a petition for writ of mandamus filed by Phillips, the petitioner, rather than a notice of appeal. In our briefing we demonstrate that a writ of mandamus cannot be used as a substitute for appeal. And because Phillips never filed a notice of appeal, the district court's finding as to its lack of subject matter jurisdiction has now become final, and in our position beyond appellate review. We cite the in-ring night case from the Ninth Circuit in support of that position. That was articulated in our opposition brief. It was ignored entirely in Phillips' reply. Right, but we routinely, if the petition for writ of mandamus is filed within the time period for an appeal, we, and vice versa, routinely will consider one as the other, and we have case law on that point. So we can consider this as a notice of appeal. Okay. Our briefing we cite to the ASCQ case from the circuit saying that it cannot be used as a substitute for appeal. We have cases that say if it meets this requirement, that requirement, you know, certain requirements, and most of those cases don't stand in the context of major civil litigation. They're mostly in the context of probably pro se people. But we do have cases that say here's the requirements, and we can deem one to be one versus the other. So I don't know if that's the case. The next point. Okay. Thank you. So we're back to the original. The original motion filed by KBC Bank was to modify an asset freeze order, and that motion was granted by the district court. When we came up to the Ninth Circuit, the Ninth Circuit determined that the asset freeze order had expired on September 17, 2007. Philips never – when it obtained its final judgment, Philips never bothered entering an asset freeze order beyond that date. So when we got before the panel of the Ninth Circuit that day, that was back at the end of 2009, I believe. Which panel? The panel that Judge Gould was on. My panel he's talking about. We were down the hallway. Okay. The determination was that that – since the asset freeze order had expired as a matter of law before we made our motion to modify it, that the judge's ruling granting that motion was meaningless because the motion itself was void ab initio because we shouldn't have made it because the asset freeze order had already expired. It wasn't a reversal in any way, shape, or form to say the district court got it wrong. The determination was you didn't even need to make this decision because they shouldn't have made the motion in the first place because the asset freeze order expired. And the reason that had to be done is because Philips' prior counsel wouldn't agree with us that the asset freeze order had expired, so we made the motion to modify. And then – so that – after making that determination in the 2010 opinion, the court then said – and I'm going to read the quote so I get it precisely. Quote, The question whether Philips has a right as a judgment creditor that is superior to rights of the KBC Bank to funds that originated from the KXD defendants cannot be resolved until factual disputes are resolved at an evidentiary hearing. That evidentiary hearing must arise in the course of a proceeding brought by the parties to adjudicate explicitly their claims to the funds. Such a proceeding is not now before us. So this is the January 2010 opinion where the Ninth Circuit panel stated that there was no proceeding that existed at that moment in time that brought that dispute before them. The only motion that has ever transpired since that opinion was written was Philips' motion to hold KBC Bank in contempt for simply freezing the assets during the six to seven weeks that the TRO was in place. That motion was denied, and this court affirmed that denial. As of now, there just simply isn't – Philips nor KBC Bank, after the January 2010 decision is written saying that such a proceeding doesn't exist. No one brought such a proceeding to life. My client hasn't. Philips hasn't either. They filed a single motion for contempt in which they conceded they weren't seeking to enforce their judgment. And there's also case law, the Shuffler case we cite in our brief, that a contempt motion cannot possibly be used to enforce a judgment. In their briefing, they have acknowledged and acknowledged this in the district court that in the over five years that they knew the funds had been transferred, they never got around to filing a writ of execution or a levy of any kind. And all this was presented before the district court, and the district court agreed with KBC Bank and said there just simply isn't a case or controversy before it at this time. Essentially, you can't hold a hearing in a vacuum. Except that it seems that the mandate of the first panel was that an evidentiary hearing had to be held and then footnote four says what issues had to be determined by the court and was remanded back to Judge Rill for that proceeding to take place. In the course of a proceeding brought by the parties to adjudicate explicitly their claims to the funds, such a proceeding is not now before us. Well, because it hadn't been conducted, right? None of the parties have brought a proceeding since that date to adjudicate their claims to the funds. Phillips could have done that. They could have served whatever writs of execution were needed to start that process. They've never done that. They filed a motion for contempt, and we showed why that was baseless. But there's no – you can't hold an evidentiary hearing in a vacuum. That's our position, and there's no – the lawsuit itself ended five years ago or six years ago now. We were a movement on a single motion that was deemed void when made by the Ninth Circuit. They were the movement on a single motion, a contempt motion, which was denied. Unfortunately, I think what happened is when the district court denied the contempt motion, the district court judge reiterated, which I would argue is really dictative to his finding, about KBC's rights in the funds, and that's the part of the – your Honor's panel vacated that portion of his finding. That's really my position. That wasn't even part of the motion to compel the motion for contempt. The motion for contempt was simply, did you violate a court order by freezing the funds? Counsel, it's just cool if I could ask you a question. Sure. When the second Ninth Circuit panel – when it addressed the contempt motion and it affirmed so there was no abuse of discretion by Judge Reel, it then expressly said, but we're remanding for this evidentiary – now, I could be wrong, but I – and I wasn't on that second panel, but I kind of read that to mean that the panel was thinking that the hearing had to be held to finally resolve issues of contempt about retaining funds. But, you know, if that might be wrong, so give me your answer to that. The way I read it and my client reads it is that the denial of the contempt motion was affirmed, but that portion of the district judge's, what I believe is dicta, reiteration of the fact that KBC had superior rights in the funds, that part of his order was vacated. And then the case – and with a statement that says, you should have read the 2002 opinion – 2010 opinion that says, to the extent you're going to rule on whose rights are superior, there's got to be a proceeding brought, and within that proceeding, there has to be an evidentiary hearing, and these are the factors we listed in the evidentiary hearing. So that portion of his ruling was stricken and said if he wants to make that ruling, you've got to conduct a hearing. But that has to be read in light of the 2010 opinion that says the hearing is conducted within a proceeding brought by the parties to adjudicate explicitly their claims to the funds, and that at that point in time, no such proceeding had been brought. Okay. Is the contempt – is the motion for contempt itself such a proceeding? No. I think it's our position that as a matter of law, a motion for contempt cannot be used as a means to – for a judgment creditor to assert its right in deposited funds. I think we cite the Shuffler case and some other cases, I think, shutting Shuffler in our opinion. They've also, in their briefing on the motion for contempt, explicitly disavowed that they were seeking to enforce their rights on the funds by bringing the contempt motion, which was in response to our citation of Shuffler and similar cases. Okay. Okay. Thank you. The panel has nothing further. Thank you, Your Honor. Thank you. A brief response. In the – when the matter was remanded, the purpose was to conduct an evidentiary hearing on the issue of retention. And we were also instructed by that panel that an action in contempt was also appropriate. In our motion, we asked – we laid it out very clearly. First contempt, but we also said, finding that all funds transferred to KBC Bank U.S. and KBC Bank Singapore, in violation of the injunction, were subject to a special trust, KBC Bank and KBC Bank Singapore did not acquire any interest or rights in such funds, and all such funds, plus all interest approved thereon since the date of receipt, must, in furtherance of equity, be transferred to the registry of the court, quote, whether or not KBC Bank and KBC Bank Singapore are adjudged in contempt. In that proceeding, I filed a separate brief, detailing in exact compliance with the first panel's denomination of the issues. In my brief, addressed each and every one, and our evidence was dispositive as to each and every one of those points. The problem is that Judge Reel did not consider that. He simply did exactly what was done before, which is he denied my motion for contempt, but he did not address the issue of the retention of the funds. And that's why, when it came back to this panel a second time, this court said, you didn't do what we told you to do. Now, when you sent it down a second time, with all due respect, Judge Reel knew exactly what he was supposed to do. In the status conference, which is of record, he said, we need to hold an evidentiary hearing, so that's what I'm going to do. And then he told me, here are the things we're going to do. You're going to be allowed to conduct discovery, because I said to him, our discovery bounced off the last time. They refused to produce anything. You need to give me sufficient time to do that. He said, well, you're going to do that. And he laid out an exact schedule as to what they were supposed to do, which we complied with. And then, when we were supposed to have our hearing, that's when this, well, no, I'm going to decide there's no case of controversy, and the whole thing went off the rails. But the reality is, Judge Reel knew exactly what he was supposed to do. It was set out in his own status report, which is of record in this case. I'm going to hold an evidentiary hearing in accordance with the mandate. So this entire process is immunizing a ruling made in March of 2008 from recourse. And it's doing so in a way which validates a position which is totally contrary to a century of precedent. KBC Bank does not have the right to receive funds unlawfully and sit there and lay in the weeds and then say, after the fact, when someone sends them a subpoena, you know what, yes, you caught us. Now we want to keep the funds. No, at a minimum, they needed to stand up and say, we're receiving funds seriatim over a period of a month. The only reason why we're here is because they were hit with a subpoena that forced them to disclose that. That's not a party that should have been granted any relief. The reality is, we did exactly what we were supposed to. The system should work. And my client should be entitled to the funds that it moved to protect. So I would ask the Court to issue a mandate, as I have previously prayed, ordering them to return the funds and directing that they be dispersed in accordance with the party's claims. Does anyone have any further questions? I have no questions. Wait a minute. Does anybody have any further questions, follow-ups? I don't. Okay. Thank you. All right. Thank you very much. Can I be heard for 30 seconds, Your Honor? Yes, you can be heard for 30 seconds. The last point he made about a mandate should order that the funds be returned to the court registry. I just want to point out the Halau case, 95F3rd 848 at page 855 to 856, which says, in quote, In sum, neither California law nor Rule 69A gave the district court the authority to order the banks to deposit the contested funds into the court registry. End of quote. That was involving Swiss bank accounts. Interestingly enough, overturning the district court judge in our particular case, Judge Reel, who had ordered the Swiss banks to deposit funds into a court registry in the Ninth Circuit. Did you cite that one in your brief? Halau cited it in our brief, Your Honor. It is in your brief? Yes, Your Honor. Okay. Thank you. Thank you, counsel. Phillips v. the district court in KBC is submitted.
judges: Goodwin, Wardlaw, Gould